]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | | |
|---|---|---|
| MARIA G. MAGANA, | ) | No. ED CV 04-1256-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendants. | ) | |

## I.

## PROCEEDINGS

Plaintiff filed this action on October 6, 2004, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments.  The parties filed a Consent to proceed before the undersigned Magistrate Judge on November 3, 2004.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on August 9, 2005, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## __BACKGROUND__

Plaintiff was born on December 12, 1957.  [Administrative Record ("AR") at 27-28, 124.] She attended school in Mexico through the sixth grade.  [AR at 27-28, 56, 142.] Plaintiff was previously employed as a warehouse worker.  [AR at 29, 137.]

In August, 2000, plaintiff filed an application for Supplemental Security Income payments, in which she alleged that she has been unable to work since August 5, 2000, due to "right arm nerve damage cause[d] by [a] car accident."  [AR at 124-26, 135-44.]  After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on December 5, 2001, at which plaintiff appeared with counsel and testified on her own behalf. [AR at 24-51.]  On December 20, 2001, the ALJ determined that plaintiff was not disabled because she retains the ability to perform light work activity.[1]  [AR at 78-82.] The Appeals Council granted review, and on March 26, 2002, remanded the case back to the ALJ. [AR at 103-06.] A subsequent hearing was held on December 10, 2002, at which plaintiff appeared without counsel and testified on her own behalf. [AR at 52-72.] A vocational expert also testified.  The ALJ issued a decision on January 23, 2003, concluding that plaintiff was not disabled and retained the ability to perform light work. [AR at 16-20].  When the Appeals Council denied review, plaintiff filed suit in federal court.  On January 27, 2004, this Court issued an order approving a stipulation to voluntarily remand the case to the ALJ to further evaluate plaintiff's subjective complaints, and to obtain supplemental evidence from the vocational expert regarding the effect of the assessed limitations.  [AR at 259-66.] Another hearing took place on June 8, 2004, at which plaintiff appeared with counsel and testified. [AR at 290-310.][2] A medical expert

---

[1]    Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. §§ 404.1567(b), 416.967(b).

[2]    The final portion of the transcript was not submitted as part of the record.  For the purposes of this opinion, however, the omission is not material.

and vocational expert also testified.  On June 6, 2004,[3] the ALJ determined that plaintiff was not disabled because she retains the ability to perform a limited range of sedentary work.[4]  [AR at 231-39.] When the Appeals Council denied review on September 24, 2004, the ALJ's decision became final. [AR at 223-25.]

### III.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

/

/

/

---

[3]   In his Opinion, the ALJ refers to the hearing that occurred on June 8, 2004 [AR at 231], and the hearing transcript contains the date June 8, 2004. [AR at 290.] The Court assumes that the June 6, 2004, decision date [AR at 228, 239], a date prior to the hearing, is an error.

[4]   Sedentary work is defined as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. §§ 404.1567(a), 416.967(a).

# IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the

sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

**B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of disability.  [AR at 232, 238.]  At step two, the ALJ concluded that plaintiff has the following severe impairments: "old fracture of the right elbow with ulnar neuropathy, diabetes mellitus, and obesity."  [<u>Id.</u>]  At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listings.  [<u>Id.</u>] The ALJ further determined that plaintiff retains the residual functional capacity[5] to perform sedentary work with certain restrictions.  [AR at 233, 238.]  At step four, the ALJ determined that plaintiff is unable to perform her past relevant work.  [AR at 238.] At step five, the ALJ concluded that, although plaintiff's limitations do not allow her to perform the full range of sedentary work, there are still a significant number of jobs in the national economy that she can perform.  [AR at 239.]  Accordingly, the ALJ found plaintiff not disabled.  [<u>Id.</u>]

**V.**

**<u>THE ALJ'S DECISION</u>**

Plaintiff contends that the ALJ: (1) failed to consider all available medical evidence regarding her upper extremity impairments and resulting limitations; (2) failed to properly evaluate her credibility; and (3) failed to properly assess the vocational impact of her upper extremity impairments.   Joint Stipulation ("Joint Stip.") at 5.   The Court agrees that the ALJ erred in assessing plaintiff's credibility, and remands the matter for further proceedings.

/

/

---

[5]    Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations.  <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

**THE ALJ'S DETERMINATION OF PLAINTIFF'S CREDIBILITY**

In 1991, plaintiff was in a car accident and sustained injuries to the ulnar nerve in her right arm and hand. [AR at 28-29, 160.] As a result, she does not have much control or strength in her right hand, and two of her fingers remain in a curled position. [AR at 33-34.] Plaintiff complains of pain in both upper extremities, with the right side worse than the left. [AR at 36.] She alleges that she needed to use her left arm more to compensate for her weaker right arm, and that her left arm began hurting due to overuse. [AR at 35, 61, 293-94.] She also complains of frequent severe headaches that are accompanied by nausea. [AR at 37-38.] When she was on Medi-Cal,[6] she received medical treatment, but was unable to afford prescription drugs. [AR at 49-50, 58.] On a daily basis, she takes three to four 800 milligram doses of Ibuprofen. [AR at 32, 45-46.]

Plaintiff lives with her boyfriend. [AR at 40.] She testified at the December 5, 2001, hearing that her boyfriend not only cooked, washed the dishes, and did the laundry, but also helped her with the remaining household chores. [AR at 40-42.] She spent her days reading, taking walks with her friend, and occasionally attending church. [AR at 44-45.] At that time, her eighteen year old son also lived with her. [AR at 40, 46-47.]

Following her car accident in 1991, she attended physical therapy, but did not find it to be helpful. [AR at 49.] She never received any subsequent referral to physical therapy. [Id.] At the hearing on December 10, 2002, plaintiff stated that she was no longer on Medi-Cal, and therefore could no longer afford any medical treatment. [AR at 57-58.] Although surgery had been recommended, she could not afford the expense. [AR at 62-63, 70.] She could only pay for over-the-counter painkillers. [AR at 58.] The pain in her upper right extremity increased since the previous hearing, and she estimated she is able to pick up a half gallon of milk with her right hand. [AR at 58-59.] With her left hand, she can pick up a full gallon. [AR at 64.] She can also use her right arm to brush her hair and teeth, and open and close buttons. [AR at 63.] Her headaches occur on a daily basis, and taking Advil for them does "not really" help. [AR at 60-61.]  Plaintiff

---

[6]   Medi-Cal is California's medical assistance Medicaid program.

testified that her boyfriend was working, and that while she is home she has to "wash and clean what [she] can do" as she has "nobody to help [her]."  [AR at 62.]

The ALJ found that plaintiff has the following medically determinable impairments:  "old fracture of the right elbow with ulnar neuropathy, diabetes mellitus, and obesity." [AR at 232.] After considering plaintiff's subjective complaints, the ALJ determined that her statements "regarding her pain and other symptoms ... are not persuasive or credible at least to the extent that she alleges an inability to perform all work activities."  [AR at 236.]

Because plaintiff produced medical evidence of underlying impairments that are reasonably likely to cause the alleged symptoms, medical findings are not required to support the alleged severity of pain or other symptoms.  Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain ... a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir.1995) (applying Bunnell to subjective physical complaints); see also Goodenow-Boatsman v. Apfel, 2001 WL 253200, *3 (N.D.Cal. Feb. 27, 2001) ("The same rule applies to other types of subjective symptoms beside pain.").

Rather, the ALJ can reject plaintiff's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider the following factors in weighing a plaintiff's credibility:  (1) her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and her conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "General findings are insufficient." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ must state which testimony is not credible and identify the evidence that undermines the plaintiff's complaints. Id.; Benton, 331 F.3d

7

1  at 1041.  If properly supported, the ALJ's credibility determination is entitled to "great deference."

2  Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

3       Here, there is no evidence of malingering, thus the ALJ's reasons for rejecting plaintiff's

4  credibility needed to be clear and convincing.  Benton, 331 F.3d at 1040.  As explained in more

5  detail below, the Court concludes that the ALJ's rejection was improper because it was based on

6  reasons that fail to meet the "clear and convincing" standard.

7       For example, the ALJ observed that plaintiff's treatment has been infrequent, routine, and

8  conservative, and that she was never prescribed physical therapy, or given electrodiagnostic

9  testing or diagnostic imaging for cerebral or musculoskeletal abnormalities. [AR at 233, 236.]

10  Moreover, her treatment history shows that she only took over-the-counter medications to treat

11  her complaints. [Id.] According to plaintiff's testimony, however, she only saw a doctor for her

12  complaints during a brief period when she was on Medi-Cal, and that after she was dropped from

13  the program, she was not able to afford further treatment.  [See AR at 43, 49-50, 58, see also

14  143.]  In addition, although surgery has been recommended to correct her right hand, plaintiff

15  cannot afford the operation. [AR at 60, 62-63.]  The Ninth Circuit has "proscribed the rejection of

16  a claimant's complaints for lack of treatment when the record establishes that the claimant could

17  not afford it."  Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 (9th Cir.

18  1999) (citing Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir.1996)).  There is no indication in the

19  decision that the ALJ took into account plaintiff's allegations regarding her financial circumstances

20  before rejecting her credibility for lack of aggressive treatment.  Similarly, because plaintiff

21  established that she cannot afford prescription medication (even while on Medi-Cal) or medical

22  care, the ALJ improperly relied on the ground that her symptoms were addressed "essentially with

23  analgesic medication with no evidence of any treatment from a primary care provider." [AR at

24  233.] The ALJ also faulted plaintiff for not following up on a referral to an orthopedic physician,

25  yet the record indicates that plaintiff's referral needed authorization from her insurance before

26  going through. [AR at 184, 236.] Taking into account plaintiff's statements regarding her financial

27  situation and termination of Medi-Cal coverage, there is no clear indication that her reason for

28

ultimately never seeing an orthopedic specialist, or, for that matter, attending physical therapy, was for any reason other than her inability to afford it.[7] [See AR at 35-37.]

The ALJ further noted the discrepancy between plaintiff's denial of any benefit from over-the-counter-painkillers, and the lack of treating notes for complaints of pain since 2001. [AR at 236.] Again, to the extent plaintiff's failure to receive treatment was a direct result of her financial situation, her credibility should not be rejected on this ground.  Moreover, the ALJ's conclusion that plaintiff's symptoms are generally controlled with Ibuprofen is unsubstantiated and contrary to plaintiff's testimony where she stated that the painkiller helps "a little bit ... [b]ut not that much." [AR at 32, 233.]  Upon remand, the ALJ is directed to reconsider plaintiff's treatment history and ensure that an unfavorable credibility determination is not erroneously premised on her inability to afford treatment.

The ALJ also determined that plaintiff's daily activities negated her complaints of debilitating pain.  Generally speaking, if a claimant has the ability to perform activities "that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent [him] from working."  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  Engaging in some chores or activities, however, is not necessarily inconsistent with a finding of disability. See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984); see also Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (stating that ability to assist with some household tasks was not determinative of disability) (citing Smith v. Califano, 637 F.2d 968, 971 (3rd Cir. 1981) (disability claimant need not "vegetate in a dark room excluded from all forms of human and social activity")). Rather, an ability to take part in some household tasks bears on a claimant's credibility only to the extent that the level of activity is in fact inconsistent with the alleged limitations.  See Reddick, 157 F.3d at 722.  The Ninth Circuit has held that the ALJ may reject a claimant's symptom testimony if she "is able to spend a substantial part of her day

---

[7]    There is indication that her doctor may have also recommended pain injections, and the prescription medications Soma and Celebrex. [AR at 49-50.] Plaintiff testified that she never received any of these. [Id.]

9

1  performing household chores or other activities that are transferable to a work setting." Smolen,

2  80 F.3d at 1284 n.7.

3       Here, in support of the unfavorable credibility determination, the ALJ cited plaintiff's ability

4  to use her right hand to lift a half gallon of milk, button items of clothing, and brush her teeth and

5  her hair. [AR at 237.]  Although these activities may indicate that plaintiff is not precluded from

6  using her right hand, the Court is not persuaded that her ability to do the stated actions clearly

7  undermines her subjective complaints of pain.  For example, the ALJ made no findings that

8  plaintiff is capable of performing these actions repeatedly or for substantial periods of time without

9  rest, and did not explain how these activities are transferable to the workplace.  See Fair, 885

10  F.2d at 603 (certain activities "are not easily transferable to what may be the more grueling

11  environment of the workplace, where it might be impossible to periodically rest...").  Nor did the

12  ALJ provide an explanation as to how her testimony is inconsistent with her claimed limitations.

13  See Reddick, 157 F.3d at 722.

14       The ALJ also premised the rejection of plaintiff's credibility on certain statements she

15  made in connection with her consultative examinations.  Specifically, the ALJ noted that in

16  September 2000, plaintiff stated she spends her days at home "doing chores" and caring for her

17  son, and that in May 2002, she reported she is able to take care of her personal needs and do

18  "a little" around the house.[8] [AR at 161, 209, 237.]  The Court finds that plaintiff's admitted ability

19  to do "chores" is too vague to convincingly weaken her credibility as the ALJ made no finding as

20  to what chores she actually does, or to what extent she is able to do them.  Nor did the ALJ point

21  out any inconsistency between the statements to the consulting physicians and her other

22  testimony that would serve to undermine her complaints.  The Court also notes that in 2001,

23  plaintiff's son was not an infant or young child, but was eighteen years old.  It is not clear what

24  tasks plaintiff was undertaking to provide his care, and whether the tasks were substantial enough

25  to indicate plaintiff was capable of working.  Moreover, without more clarification, there is no

26

27

28     [8]  According to the consultative report, plaintiff actually stated she could do "very little around the house" due to her pain. [AR at 209.]

1    convincing proof that plaintiff's ability to take care of her "personal needs" negates her subjective

2    complaints.  A claimant should not be penalized for attempting to continue some normal practices.

3    See Reddick, 157 F.3d at 722 (disability plaintiffs should not be penalized for attempting to lead

4    normal lives despite their limitations).

5          The ALJ adds that plaintiff's testimony regarding pain and its effect on her ability to get

6    dressed, shower, and do household chores was "vague and evasive," and that her failure to

7    submit any Daily Activities Reports weakens her claims. [AR at 237.] The Court has reviewed the

8    transcripts of the three hearings, and finds the ALJ's characterization of plaintiff's testimony

9    unsubstantiated.  There is nothing to suggest plaintiff was intentionally attempting to evade any

10   particular line of questioning, or was offering indefinite responses for misleading purposes.

11   Likewise, there is no indication that the omission of any Daily Activities Reports was for any

12   wrongful purpose, such as intentionally withholding evidence regarding plaintiff's physical abilities.

13         According to the ALJ, another reason for finding plaintiff unbelievable was the fact that she

14   had reported her hand pain had improved, and that her pain was not that bad. [AR at 237.] This

15   statement is misleading, however, as a closer look at plaintiff's testimony from the December 10,

16   2002, hearing shows that she testified to worsening pain in her upper right extremities, while her

17   left arm pain was "not a lot" and had remained constant. [AR at 58-61.] The ALJ further observed

18   that while plaintiff alleges severe headaches, there are no treatment records to substantiate her

19   allegations. [AR at 237.] Again, however, it is not apparent if the ALJ considered plaintiff's inability

20   to afford treatment as an explanation for the absence of related records.

21         After fully considering all the evidence regarding plaintiff's testimony, medical record and

22   activities, the Court determines that the ALJ's credibility findings and interpretation of the record

23   were not sufficiently clear and convincing.  See Reddick, 157 F.3d at 723.  Remand is therefore

24   appropriate for the ALJ to reevaluate plaintiff's credibility and assess her symptom allegations.

25   In the event the ALJ finds plaintiff not credible, he must set forth clear and convincing reasons

26   based on substantial evidence for rejecting the complaints.   Because the result of this

27

28

1   determination may impact other steps in the analysis,[9] such as the formulation of the RFC,

2   plaintiff's remaining claims will not be addressed at this time.

3

4                                    **VI.**

5                        <u>**REMAND FOR FURTHER PROCEEDINGS**</u>

6          As a general rule, remand is warranted where additional administrative proceedings could

7   remedy defects in the Commissioner's decision.  <u>See</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th

8   Cir.), <u>cert.</u> <u>denied</u>, 531 U.S. 1038 (2000); <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984).

9   In this case, remand is appropriate to further assess plaintiff's credibility.[10]

10         Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

11  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

12  for further proceedings consistent with this Memorandum Opinion.

13

14  DATED: March 6, 2006                          _____
                                                           /S/
15                                               PAUL L. ABRAMS
                                                 UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25  _____

26  [9]   For example, the ALJ's rejection of Dr. Moore's opinion concerning plaintiff's upper
     extremity limitations was based on his rejection of plaintiff's subjective complaints. [AR at 234.]
27
    [10]  In light of the Court's remand order, the Court does not address plaintiff's remaining
28  contentions of error.